IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>vs.<br><br>$32,780.00 IN UNITED STATES CURRENCY,<br><br>          Defendant. | Civil No. 8:15CV131<br><br>**COMPLAINT FOR FORFEITURE *IN REM*** |

COMES NOW the Plaintiff, United States of America, and for its cause of action against the Defendant, states and alleges as follows:

### Nature of the Action

1. This is an action to forfeit property to the United States for violations of 21 U.S.C. § 881.

### The Defendant *In Rem*

2. The Defendant property consists of $32,780.00 in United States currency seized from Raymond G. Rivera on November 6, 2014, during a traffic stop on westbound on Interstate 80 and Q Street, Omaha, Nebraska. It is presently in the custody of the U.S. Marshals Service at Omaha, Nebraska.

### Jurisdiction and Venue

3. This Court has subject matter jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345, and over an action for forfeiture under 28 U.S.C. § 1355(a). This Court also has jurisdiction over this particular action under 21 U.S.C. § 881.

4. This Court has *in rem* jurisdiction over the Defendant property pursuant to 28 U.S.C. § 1355(b)(1)(A) because acts or omissions giving rise to the forfeiture occurred in this district.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1355(b)(1)(A) because acts or omissions giving rise to the forfeiture occurred in this district.

**Basis for the Forfeiture**

6. The Defendant property is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) because it constitutes 1) money, negotiable instruments, securities and other things of value furnished or intended to be furnished in exchange for a controlled substance in violation of the Controlled Substances Act; 2) proceeds traceable to such an exchange; or 3) money, negotiable instruments, and securities used and intended to be used to facilitate a violation of the Controlled Substances Act.

**Facts Deputy**

7. On November 6, 2014, Douglas County Sheriff's Office Deputy Eric Olson stopped a 2015 Mazda 6 on westbound Interstate 80 at approximately Q Street in Omaha, Douglas County, Nebraska for speeding and for crossing over the white fog line, traveling on the Interstate shoulder for approximately twenty feet. Deputy Olson made contact with the occupants of the vehicle: The driver was Adam W. Watson (hereinafter referred to as Watson), the front seat passenger was Richard O. Aguirre (hereinafter referred to as Aguirre) and the back seat passenger was Raymond G. Rivera (hereinafter referred to as Rivera). Watson had rented the vehicle from Budget on November 1, 2014, in Modesto, California; it was supposed to be returned to the same location on November 5, 2014.

8. Deputy Olson asked Watson if he would return to the cruiser with Deputy Olson. Watson agreed. Watson told Deputy Olson the three men had travelled to the east coast, specifically to Washington, D.C., for the election and to see the Statue of Liberty. Deputy Olson asked if they had seen the Statue of Liberty while in D.C.; Watson said they did, and it was fun. Believing Watson was lying about their travel itinerary, Deputy Olson returned to the stopped vehicle to obtain identifications from Aguirre and Rivera.

9. Aguirre told Deputy Olson they were returning from seeing the Statue of Liberty in New York. Aguirre said they left California three or four days ago, drove to D.C., then to New York. They had been in D.C. for a day to a day-and-a-half. Deputy Olson asked Aguirre and Rivera if everything in the vehicle belonged to them; they both said yes. Deputy Olson then asked if there was anything illegal in the vehicle; they both said no. Deputy Olson asked if there were any large amounts of cash in the vehicle. Rivera said yes, then asked what Deputy Olson considered a large amount of cash. Deputy Olson said he was only interested in amounts of cash over $10,000.00. Rivera then said he had approximately $30,000.00 with him in case he found a car to buy. Rivera stated he did not go to look for a specific car or had any appointments to look at vehicles, but only brought the cash in case he found one he wanted to buy.

10. Deputy Olson returned to his cruiser and began a records check for Aguirre and Rivera. The El Paso Intelligence agency (EPIC) told Deputy Olson Watson and Aguirre had no criminal history, but Rivera had entries for distribution of methamphetamine and for selling a kilogram of cocaine. Deputy Olson contacted Omaha Police Department Officer Troy Liebe to come to his location to assist with the stop.

11.     While conducting the records check, Deputy Olson asked Watson if there was anything illegal in the vehicle. Watson said there was not. Deputy Olson asked Watson if there were any large amounts of cash in the vehicle. Watson paused and said, "Um, I don't think so." Watson said the only money they had was travel money. Watson said the trip was only for sightseeing and not business-related. Deputy Olson asked Watson if he knew if Rivera had been arrested before. Watson said he did not know. Watson said he met Rivera through Aguirre and had only known Rivera for about one year.

12.     Deputy Olson returned all the traffic stop documents to Watson and advised him he was receiving a verbal warning for speeding. After giving the warning to Watson, Deputy Olson asked if he would answer some more questions. Watson said, "Sure." Deputy Olson asked Watson if he could search the vehicle. Watson said, "I would like to get going." Deputy Olson told Watson he was going to walk Fletch, his drug detector canine, around the vehicle for an exterior sniff. Watson said, okay.

13.     When Officer Liebe arrived, Deputy Olson again made contact with Aguirre and Rivera. He asked Rivera about his criminal history. Rivera replied he is a confidential informant for the Federal Bureau of Investigation (FBI). Rivera would not provide the name of an FBI contact to verify his statement, nor would he disclose his prior convictions.

14.     Deputy Olson walked his drug K-9 around the vehicle. The dog indicated to the odor of narcotics coming from the passenger side of the vehicle. Deputy Olson told Watson this. Watson said Rivera had possibly smoked marijuana in the vehicle.

15.     During a probable cause search of the vehicle, deputies found a green canvas bag containing $32,780.00, cash, on the rear passenger side floor board. Although there were no

identifiers on or in the bag to indicate ownership, Rivera claimed ownership of the money. Watson and Aguirre both stated the money belonged to Rivera.

16. Deputies found a marijuana roach and a package of Zig Zag rolling papers were found on the rear driver's side floorboard. They found a vacuum sealer machine, vacuum sealer bags and two boxes of Ziplock baggies in the trunk. Watson said he did not know who brought the vacuum sealer machine and bags and did not know why they brought those items. Rivera said his father had given him the vacuum sealer machine and bags in case they caught any fish while in D.C. He said he wanted to fish while in D.C., but they ran out of time. One of the deputies asked Rivera why there were no fishing poles in the vehicle. Rivera said they were going to rent them.

17. Later, during a Mirandized interview, Watson told Deputy Olson the food saver machine and bags were his; he had purchased the machine a week before the trip. He said then three men had planned to use the food saver machine to wrap up leftovers during the trip.

18. The Mazda was transported to the Douglas County Sheriff's Office. Deputy Olson conducted a discretionary sniff of the seized $32,780.00 cash in the sterile canine locker room. His drug detector canine, Fletch, alerted and indicated to the locker containing the seized money. Said $32,780.00 is the Defendant property in this case.

## Claim for Relief

WHEREFORE, the Plaintiff, United States of America, prays that the Defendant property be proceeded against for forfeiture in accordance with the laws, regulations and rules of this Court; that due notice be given to all interested parties to appear and show cause why forfeiture should not be decreed; that the Defendant property be condemned, as forfeited, to the United

States of America and disposed of according to law and regulations; that the costs of this action be assessed against the Defendant property; and for such other and further relief as this Court may deem just and equitable.

UNITED STATES OF AMERICA,
Plaintiff

DEBORAH R. GILG
United States Attorney

By: _____
DOUGLAS J. AMEN (#25202)
Special Assistant U.S. Attorney
1620 Dodge Street, Suite 1400
Omaha, Nebraska 68102-1506
(402) 661-3700

## VERIFICATION

STATE OF NEBRASKA       )
                        ) ss.
COUNTY OF DOUGLAS       )

Pursuant to Rule C(2), Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, Special Assistant United States Attorney for the District of Nebraska, Douglas J. Amen, being first duly sworn, deposes and states the facts set forth herein are true and correct according to the best of her knowledge and belief.

DOUGLAS J. AMEN (#25202)
Special Assistant U.S. Attorney

Subscribed and sworn to before me this 21st day of April, 2015

GENERAL NOTARY - State of Nebraska
DEBRA L. WAGMAN
My Comm. Exp. March 30, 2018

Notary Public

Pursuant to the rules of this Court, the United States of America hereby requests the trial of the above and foregoing action be held in Omaha, Nebraska, and be calendared accordingly.

DOUGLAS J. AMEN (#25202)
Special Assistant U.S. Attorney